## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

|  | : |  |
|---|---|---|
| ARLENE P., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 3:21-cv-00895-SRU |
| | : | |
| KILOLO KIJAKAZI, Acting | : | |
| Commissioner of Social | : | |
| Security, | : | |
| | : | |
| Defendant, | : | |

## RECOMMENDED RULING ON PENDING MOTIONS

Arlene P. ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner" or "defendant") pursuant to 42 U.S.C. § 405(g). The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated September 2, 2020. Plaintiff timely appealed to this Court. Currently pending are plaintiff's motion for an order reversing or remanding her case for a hearing (Pl. Br., Dkt. #17) and defendant's motion to affirm the decision of the Commissioner (Def. Br., Dkt. #21).

For the following reasons, the Court recommends that plaintiff's motion to remand should be GRANTED and the Commissioner's motion to affirm should be DENIED.

**STANDARD**

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981).[1] "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . ." 42 U.S.C. § 405(g). Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. Id.; Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and whether the decision is supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

where there may also be substantial evidence to support the plaintiff's contrary position. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." Williams, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to individuals who have a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . .." 42 U.S.C. § 423(d)(1). To determine whether a claimant is disabled within the meaning of the SSA, the Administrative Law Judge ("ALJ") must follow a five-step evaluation process as promulgated by the Commissioner.[2]

---

[2] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one

To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.[3]

## PROCEDURAL HISTORY

Plaintiff initially filed for disability insurance benefits under Title II Social Security Disability Insurance Benefits on September 27, 2018. (R. 24.) Plaintiff alleged migraines, insomnia, type 2 diabetes, edema, arthritis in both hands, neuropathy, bones spur in right shoulder, torn rotator cuff in right shoulder, pinched nerve, and herniated discs, with a

---

of these enumerated impairments, the Commissioner will automatically consider him or her disabled without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)-(v).

[3] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work." Id.

disability onset date of July 1, 2018. (R. 24, 224.) The initial application was denied on May 29, 2019, and upon reconsideration on December 6, 2019. (R. 24) Plaintiff then filed for an administrative hearing, which was held by ALJ Aletta (hereinafter "the ALJ"). (R. 40–75.) The ALJ issued an unfavorable decision on September 2, 2020. (R. 11–26.) On May 3, 2021, the Appeals Council denied plaintiff's request for review. (R. 1.) Plaintiff then timely filed this action seeking judicial review. (Dkt. #17.)

## **THE ALJ'S DECISION**

After applying the five-step evaluation process, the ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act from her onset date of July 1, 2018, through her date last insured ("DLI"), which is September 30, 2022. (R. 26–33.) At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity between her alleged onset date and her DLI. (R. 26.) At step two, the ALJ found that plaintiff had the following severe impairments: emphysema, coronary artery disease, degenerative disc disease of the lumbar spine with anterolisthesis, and obesity. (R. 27.)

At step three, the ALJ found that plaintiff's severe impairments did not meet or medically equal the severity of a listed impairment in 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (20

C.F.R. 404.1520(d), 404.1526, 416.920(d), 416.925, and 416.926).
(R. 28.) The ALJ specifically considered claimant's spinal
impairment under Listing 1.04 pertaining to disorders of the
spine but found that there was no indication that she was unable
to ambulate effectively, and a radiographic report stated the
spinal hardware was stable, so the criteria of this listing were
not satisfied. (R. 28.) The ALJ considered the plaintiff's
pulmonary impairment under Listing 3.02 pertaining to chronic
respiratory disorders but determined that the results of
pulmonary functioning testing found no restrictive or
obstructive lung changes that would satisfy the requirements of
this listing. (R. 28.)

Next, the ALJ considered the plaintiff's coronary artery
disease under Listing 4.04 pertaining to ischemic heart disease
but found that echocardiogram results indicated that plaintiff's
estimated left ventricular ejection fraction was normal at
fifty-five to sixty percent, and therefore did not meet the
listing criteria. (R. 29.) Lastly, the ALJ considered the
plaintiff's obesity under SSR 19-2p but found that the evidence
in the record did not reflect adverse effects of obesity on any
body system to the degree that plaintiff would have impairment
of Listing severity. (R. 29.)

The ALJ found that the plaintiff had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations: She could occasionally climb ramps and stairs, could occasionally climb ladders, ropes or scaffolds, could frequently balance, and could occasionally stoop, kneel, crouch, and crawl. She could not tolerate more than brief incidental exposure to extreme cold. She must avoid concentrated exposure to extreme heat. She must avoid concentrated exposure to humidity and wetness. She must avoid concentrated exposure to dust, fumes, odors, gases and pulmonary irritants.

(R. 29.) At step four, the ALJ concluded that plaintiff could perform her past relevant work as a medical assistant, thereby ending the evaluation process. (R. 32.)

## DISCUSSION

The plaintiff argues that the ALJ inadequately weighed Dr. Spiro's medical source opinion ("opinion"), failed to develop the record, and failed to support his RFC determination. (Pl. Br. 7—17.)

### I.  The ALJ's Evaluation of Dr. Spiro's Medical Source Opinion

The plaintiff argues that the ALJ improperly weighed the opinion of plaintiff's spine surgeon, Dr. David Spiro. (Pl. Br. 7–13.) For claims filed before March 27, 2017, the regulations require the application of the "treating physician rule," under which treating source opinions could receive controlling weight

7

provided they were not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2). However, the regulations have done away with the "treating physician rule" for claims filed after March 27, 2017. The new regulations state that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

The ALJ will consider medical opinions according to the following factors: (1) whether objective medical evidence supports and is consistent with the opinion; (2) the relationship between the medical source and claimant; (3) the medical source's specialty; and (4) other factors that "support or contradict a medical opinion[.]" Id. §§ 404.1520c(c), 416.920c(c). The ALJ must explain how he or she considered the "supportability" and "consistency" of the opinion but is not required to explain how he or she considered the secondary factors unless the ALJ finds that two or more medical opinions regarding the same issue are equally supported and consistent with the record but not identical. 20 C.F.R. § 404.1520c(b).

In terms of "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented

by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinion(s) or prior administrative finding(s) will be." Id. §§ 404.1520c(c)(1), 416.920c(c)(1). In terms of "consistency," "[t]he more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative finding(s) will be." Id. §§ 404.1520c(c)(2), 416.920c(c)(2).

Although the treating physician rule has technically been eliminated from regulations, courts within the Second Circuit have noted that the essence of the treating physician rule remains. Courts within the Second Circuit have held that

> [a]lthough the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning weight to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all the medical opinions. The two most important factors for determining the persuasiveness of medical opinions are consistency and supportability, which are the same factors that formed the foundation of the treating source rule.

Brian O. v. Comm'r of Soc. Sec., No. 1:19-CV-983 (ATB), 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020). *See also* Acosta Cuevas v. Comm'r of Soc. Sec., No. 20CV0502AJNKHP, 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021)("While the treating physician's rule was modified, the essence of the rule remains the same, and the

factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar.") Further, the ALJ is not required to address how he weighed the relationship between the claimant and a physician, he is required to articulate how the weight of each opinion was assigned. Jacqueline L. v. Comm'r of Soc. Sec., 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021)(quoting 20 C.F.R. §404.1520c(c)). Here, The ALJ found the opinion of plaintiff's spinal surgeon to be unpersuasive. (R. 32.) Plaintiff first saw Dr. David Spiro in October 2018, when Dr. Spiro performed a physical evaluation and recommended lumbar spine surgery. (R. 661-665.) Plaintiff underwent surgery with Dr. Spiro in January 2019 and has received follow up care from him. (R. 359-60, 1169-75, 1480.) Dr. Spiro opined that plaintiff uses a cane for an antalgic gait, that plaintiff could only stand and walk for two hours and sit for four hours within an eight-hour day, that she cannot perform postural maneuvers, and that she could lift less than ten pounds frequently and lift ten pounds occasionally. (R. 1492-94.) Dr. Spiro also reported that plaintiff would be limited to sedentary work capacity, that her pain would frequently interfere with work, and estimated that she would be absent from work for greater than four days per month due to her symptoms. (R. 1492-94.) The ALJ found that Dr. Spiro's opinion was "inconsistent with and unsupported by the radiographic

10

evidence in his treatment records which demonstrated stable,
intact hardware." (R. 32.) Additionally, the ALJ asserted that
the plaintiff's physical examinations were "essentially normal,"
that plaintiff was able to ambulate without a cane in March
2019, and that she told a physical therapist in December of 2019
that she was "able to function at her current pain level." (R.
32.)

    With respect to the ALJ's determination regarding the
consistency and supportability of Dr. Spiro's opinion, it is
unclear if the ALJ considered the consistency and supportability
of Dr. Spiro's opinion in reference to the record as a whole.
The ALJ only addressed consistency and supportability when
comparing Dr. Spiro's opinion to radiographic evidence contained
in his treatment notes. (R. 32.) In considering the consistency
and supportability of a medical source opinion, an ALJ must
consider "whether objective medical evidence supports and is
consistent with the opinion." 20 C.F.R. § 404.1520c(c). The ALJ
must base the RFC on the record as a whole. 20 C.F.R. §
404.1545(a)(3). An ALJ may not "cherry pick" medical evidence in
the record to support his decision while arbitrarily assigning
weight to others. Artinian v. Berryhill, 2018 WL 401186, at *8
(E.D.N.Y. Jan. 12, 2020). Additionally, an ALJ cannot rely on
isolated portions of treatment notes that are supportive of his
decision and disregard the majority of evidence in the record.

Salisbury v. Saul, 2020 WL 913420, at *34 (S.D.N.Y. Feb. 26, 2020). The Court acknowledges that the record does not include a significant number of treatment notes regarding plaintiff's spinal injury and surgery recovery. Nonetheless, the ALJ only expressly considered the consistency and supportability of Dr. Spiro's opinion with one X-ray report. (R. 32, 376.) The ALJ does not mention how Dr. Spiro's opinion compares to any other physician's opinion or treatment notes in the record. (R. 32.) It was improper for the ALJ to "cherry pick" and focus solely on an isolated piece of evidence in the record to determine that a physician's medical source opinion was inconsistent with the record and unsupported by objective medical evidence. In doing so, the ALJ failed to consider the factors in 20 C.F.R. § 404.1520c(c).

Further, it is unclear how the radiographic evidence carries persuasive weight. The ALJ does not specifically identify which radiographic evidence he referred to. (R. 32.) However, upon review of the record, it appears that the ALJ is referring to an X-ray performed on February 28, 2019. (R. 376.) The results of that X-ray state the following: "Status pose posterior L4-L5 fusion and disc spacer placement. There is minimal anterolisthesis of L4 on L5. There is no fracture. There is no subluxation. No change on flexion or extension. Hardware intact." (R. 376.) This X-ray report does not indicate how the

plaintiff was feeling, ambulating, or functioning. (R. 376.) Additionally, the X-ray was performed only one month after plaintiff underwent lumbar spine surgery. (R. 363, 376.) In October 2019, Dr. Spiro indicated that plaintiff's recovery had been delayed because of her cardiac complications, and therefore her work capacity could not be determined at that point. (R. 1175.)

Since the physician who oversaw the placement of plaintiff's hardware— Dr. Spiro -- opined that plaintiff's working capacity could not be determined nine months after her surgery, and eight months after the X-ray was taken, it is unclear why the X-ray in question cuts against Dr. Spiro's opinion. As Judge Hall has explained, medical source opinions are valuable because they "afford[] physicians the opportunity to explicitly assess the claimant's limitations and RFC, a necessary component of developing the record." Angelica M., 2021 WL 2947679, at *6.

Turning next to the ALJ's finding that plaintiff's physical evaluations were "essentially normal," plaintiff's physical evaluations after her surgery are largely nonspecific to her spinal injury or recovery. (R. 515, 523, 534, 634, 674, 677, 698, 702-03, 711, 721-22, 785, 876-77, 1129-30, 1136-37, 1190, 1357, 1487-89.) These treatment notes mostly involve plaintiff's

13

cardiovascular complications and sleep apnea, and there is very little mention of plaintiff's spinal function and recovery. When plaintiff's spinal injury is discussed, phrases such as "normal range of motion," or "normal gait" appear on the treatment notes. (R. 515, 534, 674, 677, 702-03, 722, 785, 876-77.) Given the vague and nonspecific nature of these medical notes, it is difficult to see how this medical evidence undercuts Dr. Spiro's opinion.

Next, the ALJ states that there is evidence in the record that plaintiff was ambulating without a cane in March 2019. (R. 32.) The ALJ relies on this information to discredit the opinion that plaintiff uses a cane to ambulate. There is conflicting evidence in the record regarding whether plaintiff uses a cane to ambulate. The record indicates that plaintiff was able to ambulate without a cane during a medical appointment on March 29, 2019. (R. 878.) However, the first state agency report, conducted by Samuel Bridgers, MD on April 30, 2019, asserts that plaintiff noted prescribed cane use on March 31, 2019, and that plaintiff brought a cane to the appointment on March 29, 2019. (R. 80-88.) However, the record is unclear and contradictory as to plaintiff's use of a cane to ambulate. Based on the evidence in the record, the Court is unable to discern how this evidence undercuts Dr. Spiro's opinion.

The ALJ failed to consider the factors listed in <u>20 C.F.R.
§ 404.1520c(c)</u> in weighing Dr. Spiro's opinion. The ALJ's
consistency and supportability analysis fails because the ALJ
did not consider the opinion against the entire record. 20
C.F.R. § 404.1545(a)(3). The remaining evidence the ALJ proposes
to support his decision to dismiss Dr. Spiro's opinion is
contradictory. Therefore, Court concludes that the ALJ has
failed to "articulate how the weight of each opinion was
assigned." <u>Jacqueline L.</u>, 515 F. Supp. 3d at 8.

## II.  The ALJ Failed to Develop the Record and Fails to Support His RFC Determination

The plaintiff argues that the ALJ failed to develop the
record by neglecting to request additional information before
creating his RFC determination. (Pl. Br. 13-14.) Plaintiff also
argues that the ALJ had insufficient evidence to create his RFC
determination. (Pl. Br. 14-16.) When a plaintiff argues that the
ALJ failed to develop the record, "the issue is whether the
missing evidence is significant, and plaintiff bears the burden
of establishing such harmful error." <u>Parker v. Colvin</u>, No.
3:13-cv-1398 (CSH), 2015 WL 928299, at *12 (D. Conn. Mar. 4,
2015). However, an ALJ has an affirmative duty to develop the
record "in light of 'the essentially non-adversarial nature of a
benefits proceeding.'" <u>Pratts v. Chater</u>, 94 F.3d 34, 37 (2d Cir.
1996) (quoting <u>Echevarria v. Secretary of HHS</u>, 685 F.2d 751, 755

(2d Cir. 1982)); see also <u>Swiantek v. Commissioner</u>, 588 F. App'x
82, 83—84 (2d Cir. 2015).

A court must remand "where 'the medical records obtained by
the ALJ do not shed any light on the [claimant's RFC], and
[where] the consulting doctors did not personally evaluate' the
claimant." <u>Martinez v. Berryhill</u>, No. 3:17-cv-843 (SRU), 2019
WL 1199393, at *11 (D. Conn. Mar. 14, 2019) (quoting <u>Guillen v.
Berryhill</u>, 697 F. App'x 107, 108-09 (2d Cir. 2017) (summary
order)). "The record is insufficient when '[t]he medical
records discuss [the claimant's] illnesses and suggest treatment
for them, but offer no insight into how [the] impairments affect
or do not affect [the claimant's] ability to work, or [his]
ability to undertake the activities of daily life.'" <u>Martinez</u>,
2019 WL 1199393, at *11 (alterations in original) (quoting
<u>Guillen</u>, 697 F. App'x at 109).

Courts within the Second Circuit have held that "it is not
per se error for an ALJ to make a disability determination
without having sought the opinion of the plaintiff's treating
physician." <u>Delgado v. Berryhill</u>, No. 17-CV-54, 2018 WL 1316198,
at *8. It has been further held that when "the record contains
sufficient evidence from which an ALJ can assess [a claimant's]
residual functional capacity," the absence of treating source
opinions will not require remand. <u>Tankisi v. Comm'r of Soc.
Sec.</u>, 521 F. App'x 29, 34 (2d Cir. 2013)(summary order).

> According to the Tankisi court, the "sufficient evidence" standard evidence was at least met when the medical records were "extensive," "voluminous," and included "an assessment of [the claimant's] limitations from a treating physician." Tankisi, 521 F. App'x. at 34. In interpreting Tankisi, another Judge in this District has found that, "[i]n essence, [it] dictates that remand for failure to develop the record is situational and depends on the circumstances of the particular case, the comprehensiveness of the administrative record, and ... whether an ALJ could reach an informed decision based on the record. Holt v. Colvin, No. 16-CV-1971, 2018 WL 1293095, at *7 (D. Conn Mar. 13, 2018)

Angelica M. v. Saul, No. 3:20-CV-00727 (JCH), 2021 WL 2947679, at *5 (D. Conn. July 14, 2021). In Angelica M., Judge Hall noted that the sufficiency of the evidence will turn on the underlying medical records that address a claimant's work limitations. *See* Id. at *5. It is worth nothing that

> Tankisi, its progeny, and the case law interpreting the obligation of an ALJ to seek medical source statements to develop the record all deal with claims made when the old treating physician rule was in effect, and predate the introduction of the new regulations for considering medical opinions for claims filed on or after March 27, 2017. 20 C.F.R § 404.1520c; 20 C.F.R. § 404.1527.

Id. at *6. Under the new regulation, the ALJ does not have to provide controlling weight or defer to a specific medical opinion, the inquiry is now focused on matters of supportability, consistency, and the relationship with the plaintiff. 20 C.F.R. § 404.1520c. However, Judge Hall, in analyzing the Tankisi decision, concluded that even if not given controlling weight under the new regulation, medical source

statements and opinions are still valued "because they afford[]
physicians the opportunity to explicitly assess the claimant's
limitations and RFC, a necessary component of developing the
record." Angelica M., 2021 WL 2947679, at *6.

The Court's principal concern here is that the ALJ's
finding that Dr. Spiro's opinion was unpersuasive left the
record without any medical source statements from any physicians
who actually examined plaintiff. The record indicates that
plaintiff had additional appointments with Dr. Spiro that are
not included in the record. (R. 1480.) Upon review of the
record, it is unclear if the ALJ made any attempts to request
additional information from Dr. Spiro.

Further, there is little evidence in the record which
specifically addresses the plaintiff's lumbar spine injury and
recovery from her spinal surgery. The majority of physician
evaluations conducted after plaintiff's spinal surgery were non-
specific to her spinal injury and recovery. (R. 515, 523, 534,
634, 674, 677, 698, 702-03, 711, 721-22, 785, 876-77, 1129-30,
1136-37, 1190, 1357, 1487-89.) These treatment notes largely
revolve around plaintiff's cardiovascular complications post-
surgery and her sleep apnea. There is very little mention of
plaintiff's spinal function and recovery. The underlying record
is not sufficient to create a substantiated RFC determination.

The record does not contain any other examining physician opinions; the medical notes in the record provide little insight into the plaintiff's spinal injury post-surgery; and there is evidence in the record indicating that treatment notes from Dr. Spiro are missing.  Therefore, the Court finds that the ALJ had a duty to request additional information regarding plaintiff's spinal injury and surgery. By failing to obtain additional medical information, the ALJ neglected to fill a gap in the record. In light of the significant gap in the record and the vague nature of the evidence supporting the ALJ's RFC determination, the Court finds that the ALJ did not have "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams, 859 F.2d at 258 (2d Cir. 1988).

## CONCLUSION

Based on the foregoing reasons, the Court recommends that plaintiff's motion for an order to remand the Commissioner's decision (Dkt. #17) should be GRANTED and the Commissioner's motion to affirm that decision (Dkt. #21) should be DENIED.

This is a recommended ruling. **Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days of being served with this order.** *See* Fed. R. Civ. P. 72(b)(2). Failure to object within fourte (14)

days may preclude appellate review. *See* 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 6(a), 6(d), & 72; D. Conn. L. Civ. R. 72.2(a);

<u>F.D.I.C. v. Hillcrest Assoc.</u>, 66 F.3d 566, 569 (2d Cir. 1995);

<u>Small v. Sec'y of H.H.S.</u>, 892 F.2d 15, 16 (2d Cir. 1989) (per

curiam).

SO ORDERED this **7th** day of **September, 2022**, at Hartford,

Connecticut.

_____/s/_____

Robert A. Richardson
United States Magistrate Judge