UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARLENE P.,<br>     Plaintiff,<br><br>     v.<br><br>KILOLO KIJAKAZI, COMMISSIONER<br>OF SOCIAL SECURITY,[1]<br>     Defendant. | No. 3:21-cv-00895 (SRU) |

## ORDER

Plaintiff Arlene P. appealed the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. On September 7, 2022, U.S. Magistrate Judge Robert A. Richardson issued a recommended ruling (the "Recommended Ruling") (doc. no. 22), which recommended that the defendant's Motion to Affirm the Decision of the Commissioner (doc. no. 21) be denied. The Commissioner timely filed an objection to the Recommended Ruling on September 13, 2022 (doc. no. 23). For the reasons set forth below, the Commissioner's objection is OVERRULED.  The Recommended Ruling is adopted and Arlene P.'s Motion to Remand for a Hearing (doc. no. 17) is GRANTED.

**I.     Background**

The court assumes the parties' familiarity with the underlying facts.  A full statement of the relevant facts can be found in Magistrate Judge Richardson's Recommended Ruling (which I incorporate by reference here).  *See* Recommended Ruling, *Arlene P. v. Kijakazi,* 3:21-cv-00895 (SRU) (Doc. 22).

---

[1] On or about July 9, 2021, Kilolo  Kijakazi became the acting Commissioner of the Social Security Administration and is substituted for Andrew Saul as defendant in this action. *See* Fed. R. Civ. Proc. 25(d)(1).  The Clerk of the Court is directed to update the docket accordingly.

## II.     Standard of Review

"In the face of an objection to a Magistrate Judge's recommended ruling, the District Court makes a *de novo* determination of those portions of the recommended ruling to which an objection is made." *Smith v. Barnhart*, 406 F. Supp. 2d 209, 212 (D. Conn. 2005); *see also Burden v. Astrue*, 588 F. Supp. 2d 269, 271 (D. Conn. 2008). The court may adopt, reject, or modify, in whole or in part, the Magistrate Judge's recommended ruling. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

A district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). It is not the court's function to determine *de novo* whether the claimant was disabled. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the court must review the record to determine first whether the correct legal standard was applied and then whether the record contains substantial evidence to support the decision of the Commissioner. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *see Bubnis v. Apfel*, 150 F.3d 177, 181 (2d Cir. 1998); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998) (Administrative Law Judge's ("ALJ") decision only set aside where it is based on legal error or is not supported by substantial evidence.).

When determining whether the Commissioner's decision is supported by substantial evidence, the court must consider the entire record, examining the evidence from both sides. *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). Substantial evidence need not compel the Commissioner's decision; rather substantial evidence need only be evidence that "a reasonable

mind might accept as adequate to support [the] conclusion" being challenged. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002) (internal quotation marks and citations omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks and citation omitted).

### III. Discussion

The Commissioner objects to the Recommended Ruling, arguing that the ALJ's treatment of Dr. David Spiro's opinion was supported by substantial evidence. Def.'s Obj. to R.R., Doc. 23 at 1–2. The Commissioner further objects to Judge Richardson's holding that the ALJ neglected to fill a gap in the record. *Id.* I will address those arguments below.

####     a. Substantial Evidence

For claims filed before March 27, 2017, the Social Security Administration ("SSA") followed the "treating-physician rule," under which a treating source opinion was entitled to controlling weight provided it was not inconsistent with other substantial evidence in the record, and it was well-supported by medically acceptable clinical and laboratory diagnostic techniques. *See* 20 C.F.R. § 404.1527(c)(2). For claims filed after March 27, 2017, the Commissioner issued new regulations, which abrogated the "treating-physician rule" and eliminated the perceived hierarchy of medical sources, any deference to specific medical opinions, and assignment of weight to medical opinions. *Andrew G. v. Comm'r of Soc. Sec.,* 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020); *see also* 20 C.F.R. §§ 404.1520c and 416.920c. Under the new regulations, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Instead, the ALJ

3

evaluates medical opinions according to the following factors: supportability, consistency, relationship with the claimant, length of treatment relationship, frequency of examinations, purpose of treatment relationship, extent of treatment relationship, examining relationship, specialization, and other factors. 20 C.F.R. § 416.920c(c)(1)-(5). The most important factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Supportability is determined by the degree to which objective medical evidence and explanations support a medical opinion or finding. 20 C.F.R. § 416.920c(c)(1). Consistency is the extent to which a medical opinion or administrative medical finding is consistent with evidence from other medical and non-medical sources. 20 C.F.R. §§ 416.920c(c)(2). Although the regulations require the ALJ to articulate how he or she considered the most important factors of supportability and consistency, an explanation for the remaining factors is not required except when deciding among multiple medical opinions of equal support and consistency that are not "exactly the same." 20 C.F.R. § 416.920c(b); *see also Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021). Because Arlene P. filed her claim on September 17, 2018, the ALJ was required to evaluate opinion evidence in accordance with the new regulations.

explanation

  Here, the medical opinion in question is a medical source statement dated March 23, 2020, from treating physician Dr. David Spiro that is significantly at odds with the ALJ's residual functional capacity ("RFC") assessment. R. at 1492–94. In it, Dr. Spiro opined that Arlene P. suffered from chronic lower back pain and left leg weakness that made it difficult for her to walk. R. at 1492. According to Dr. Spiro, Arlene P.'s lower back pain—described as chronic—worsened with movement, and was exacerbated with "bending, squatting, and activities." *Id.* Dr. Spiro noted that Arlene P. walked with an antalgic gait and used a cane. *Id.*

He determined that Arlene P. was limited to sitting for four hours a day and to standing and walking for two hours a day. R. at 1493. In addition, he opined that she could lift less than ten pounds frequently and ten pounds occasionally. *Id.* Dr. Spiro further limited Arlene P. from performing most postural maneuvers and opined that she could rarely climb stairs. R. at 1493. He estimated that she would likely be absent from work more than four days per month. R. at 1494. The ALJ did not find Dr. Spiro's opinions persuasive. R. at 32.

### i. Assistive Device

To discredit the opinion of Arlene P.'s treating physician, the ALJ referred generally to a visit that occurred in March 2019 when Arlene P. was able to walk without an assistive device. R. at 32. The record reflects that three doctors' visits (March 19, 2019, March 28, 2019, and March 29, 2019) took place in March—almost exactly one year before Dr. Spiro issued the medical source statement. On March 19, 2019, Arlene P. followed up with Dr. Steven R. Prunk, a pulmonologist, for treatment of pulmonary emphysema and pneumothorax. R. at 1428. Dr. Prunk noted that Arlene P. suffered from occasional shortness of breath with exertion, otherwise her physical exam was relatively normal. R. at 1428–29. It appears, however, that Dr. Prunk focused solely on Arlene P.'s pulmonary and sleep issues, not her back pain. On March 28, 2019, Arlene P. followed up with a cardiologist, Dr. Jan R. Paris, during which the focus of the visit was Arlene P.'s coronary artery disease and her recovery from an acute inferior wall myocardial infarction. R. at 1135. Dr. Paris's treatment notes provide a conflicting picture about Arlene P.'s back condition. First, he noted that she was "still having issues with her back and walking" and that "her left leg bother[ed] her a bit," but later he noted "no muscle aches and no muscle weakness" in his review of systems. R. at 1135–36. On March 29, 2019, Arlene P. met with nurse practitioner Amin Hanjani Sharareh ("Sharareh") for her second neurosurgical

follow-up. R. at 878. During the visit, Arlene P. reported suffering from occasional left foot pain, which occurred with prolonged standing and walking. *Id.* In the History of Present Illness section, Sharareh wrote that Arlene P. could ambulate independently without the use of a device. *Id.* In that same visit, however, Sharareh also observed that Arlene P. "ambulate[d] with a cane," resulting in treatment notes that are irreconcilably at odds with each other. R. at 882. Although it is not clear from the ALJ's decision to which March 2019 medical record or records the ALJ might be referring, the March 29th visit is the only visit that mentions the use (or lack of use) of a cane. In rejecting Dr. Spiro's opinion that Arlene P. used a cane to ambulate, the ALJ relied on a particular section of the March 29th visit to the exclusion of the rest. Because the ALJ cherry-picked the record from the March 29th visit to find that use of a cane was not a limitation for Arlene P.'s RFC, his analysis on that score lacks substantial evidentiary support.

Of course, the ALJ was free to discount Arlene P.'s use of a cane if there was insufficient "medical documentation establishing the need for a hand-held assistive device." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). It is worth noting that, in addition to the March 2019 visit, there are other places in the record where use of a cane was mentioned. *See* Recommended Ruling, Doc. 22, p. 14. As late as July 21, 2020, Arlene P. testified that she "walk[ed] through the pain with a cane." Hr'g Tr., R. at 56. Thus, the record supports that Arlene P. has used a cane in the past to ambulate. What is not clear is whether a physician prescribed a cane or recommended that she ambulate with a cane, thus establishing the need for a hand-held device.[2] As discussed in greater detail below, there are gaps in the record with respect to post-operative follow-up appointments with Dr. Spiro. Under the circumstances, therefore, the ALJ should

---

[2] To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).

have contacted Dr. Spiro for clarification about why and for how long a cane would be required. Because the ALJ did not adequately support his finding that "the overall record fail[ed] to show sustained use of a cane or other assistive device," the RFC assessment lacks the support of substantial evidence pursuant to SSR 96-9p. ALJ Dec., R. at 31. The procedural error is not harmless and warrants remand for further consideration of Dr. Spiro's medical opinion.

      ii.  Pain

The ALJ also discredited Dr. Spiro's opinion that "pain would frequently interfere with [Arlene P.'s] concentration" and that "she would be absent from work for more than four days a month due to her symptoms" because that opinion, according to the ALJ, was inconsistent with a December 2019 physical therapy session during which Arlene P. advised her physical therapist that she was able to function at her current pain level. *Id.*, at 32. Again, the specific physical therapy date to which the ALJ refers is unclear. The record shows that Arlene P. visited the physical therapist at least nine times in the month of December 2019. On December 5, 2019, for instance, Arlene P. reported increased soreness in her lower back but "not enough to stop her from functioning." R. at 1322. Between December 6 and December 30, 2019, Arlene P. continued to report varying levels of pain in her back and neck.[3] R. at 1282–1317. On December 30, 2019, Arlene P. was discharged from physical therapy. The therapist noted that Arlene P. could control her pain without medication but qualified that statement with the phrase "for the most part." R. at 1276. The physical therapist's observations, which provide a snapshot

---

[3] On December 6, 2019, Arlene P. reported that she was "moving better but stress from the household [was] causing her . . . pain in the back." R. at 1317. On December 9, 2019, Arlene P. reported decreased pain in her back but increased tension in her neck. R. at 1311. On December 11, 2019, Arlene P. reported increased soreness in the spine and tension in her body. R. at 1305. On December 13, 2019, Arlene P. reported some improvement with exercise but the tension and pain in the left side of her back continued. R. at 1300. On December 16, 2019, Arlene P. reported increased pain and leg weakness over the weekend, but her symptoms improved post therapy. R. at 1294. On December 20, 2019, Arlene P. reported improvement post therapy. She stated that she did not need assistance getting out of bed. R. at 1288. On December 23, 2019, Arlene P. continued to improve and reported less pain and tension in her back. R. at 1282.

of Arlene P.'s symptoms at a given time, could hardly be described as "essentially normal." Even if the record as a whole should show relatively normal physical examinations, the bulk of the medical record consists of documentation from Arlene P.'s treating specialists, a cardiologist and a pulmonologist, who focused on and treated only one particular ailment out of the many. The ALJ had a responsibility to consider Dr. Spiro's opinion with greater care and to make the basis of his conclusion clear. Because the ALJ did not specifically cite to the record and identify which physical therapy visits he believed supported his conclusion, his reasons for discounting Dr. Spiro's opinion regarding Arlene P.'s pain level have not been clearly stated. With no reasoning to evaluate, I cannot determine whether substantial evidence supports the ALJ's conclusion regarding Arlene P.'s pain level.

Finally, the Commissioner argues that the ALJ properly identified the inconsistency of Dr. Spiro's opinion with "radiographic evidence that demonstrated stable, intact hardware." Def.'s Obj. to R.R., Doc. 23 at 2. The only post-surgery radiographic evidence of record is one x-ray report dated February 28, 2019. R. at 376. That report speaks only to the stability of the hardware installed in Arlene P.'s back, not her subjective complaints of pain. The record contains no additional objective medical evidence of Arlene P.'s back or spine. Even if the radiographic evidence supports the ALJ's findings, one x-ray report, standing alone and without more, is not substantial evidence—that is, it cannot reasonably support the conclusion that Arlene P. can work.

### iii. Gap in the Record

When there are gaps in the administrative record or the Court is unable to fathom the ALJ's rationale in relation to the evidence in the record without further findings or clearer explanation, remand is appropriate. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (quoting

*Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *see also Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) (per curiam). Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts*, 94 F.3d at 39. I agree with Magistrate Judge Richardson that "the medical notes in the record provide little insight into the plaintiff's spinal injury post-surgery." R.R., Doc. 22 at 19. The progress notes of Arlene P.'s specialists do not adequately address her spinal impairments, let alone her long-term ability to function. Treatment records following spine surgery focus on Arlene P.'s heart and lung function, not her back injury. A review of the record reveals that at least one additional appointment scheduled in January 2020 with Dr. Spiro is missing. *Id.* at 19; R. 1480, 1484. That gap in the record makes it impossible to evaluate whether Arlene P.'s physical examinations were "essentially normal" and thus that the ALJ's finding was supported by substantial evidence. ALJ Dec., at 32.

### IV.   Conclusion

For the foregoing reasons, the Recommended Ruling of September 7, 2022 is ADOPTED. The decision of the Commissioner is REVERSED and the case is remanded to the Commissioner for further proceedings. The Clerk shall enter judgment, effect remand to the Commissioner, and close the case. The Clerk's office is further instructed that, if any party appeals to the Court the decision made after remand, any subsequent Social Security appeal is to be assigned to the Magistrate Judge who issued the Recommended Ruling in this case, and then to the District Judge who issued the Ruling that remanded the case.

So ordered. Dated at Bridgeport, Connecticut, this 5th day of October 2022.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge